# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3917 | **DATE** | September 25, 2003 |
| **CASE TITLE** | Richard Stephenson, et al v. Hartford, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motions to dismiss the SAC in its entirety pursuant to Rule 9(b) and the PSLRA [30-1, 33-1, 36-1, 52-1] are granted. Plaintiffs may have until October 16, 2003 to file an amended complaint consistent with this order and with counsel's obligations under Federal Rule of Civil Procedure 11. ENTER MEMORANDUM OPINION.

(11) x [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| X | Notices MAILED by judge's staff. | | SEP 26 2003 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | docketing deputy initials | | |
| | Mail AO 450 form. | | | | |
| | Copy to _____ | | | | |
| KAM | courtroom deputy's initials | | date mailed notice | | |
| | | | KAM | | |
| | | | mailing deputy initials | | |

U.S. DISTRICT COURT
CLERK
03 SEP 25 PM 3:1.
FILED FOR DOCKETING

Date/time received in central Clerk's Office
(Reserved for use by the Court)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD J. STEPHENSON, STEPHENSON MASTER LP, STEPHENSON/ZION INSURANCE TRUST, MIDWESTERN REGIONAL MEDICAL CENTER, INC., and CANCER TREATMENT CENTERS OF AMERICA, INC., | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | No. 02 C 3917 |
| HARTFORD LIFE AND ANNUITY INSURANCE COMPANY, HARTFORD LIFE, INC., HARTFORD LIFE INSURANCE COMPANY, INC., ELAR PARTNERS LLC, OGILVIE SECURITY ADVISORS CORP., GERALD D. RICKEN, MICHAEL E. KOHN, and APPLIED INNOVATIVE MONETARY SOLUTIONS, LLC, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

DOCKETED
SEP 2 6 2003

### MEMORANDUM OPINION

Before the court are defendants' motions to dismiss the Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and the pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u – 4(b). For the reasons set forth below, the motions are granted.

## BACKGROUND[1]

### A.    The Parties

This action arises out of plaintiffs' 2001 purchase of a variable life insurance policy (the "2001 Policy") insuring plaintiff Richard J. Stephenson ("Stephenson").   In addition to Stephenson, plaintiffs are Stephenson Master LP, an Illinois limited partnership of which Stephenson is the limited partner ("Stephenson Master"); Stephenson/Zion Insurance Trust, an Illinois trust that owns and is the beneficiary of an earlier life insurance policy covering  Stephenson ("Stephenson Zion");   Midwestern Regional Medical Center, Inc. ("MRMC") and Cancer Treatment Centers of America, Inc. ("CTCA"), both Illinois corporations of which Stephenson is the Chairman and sole shareholder, and which were assigned or paid the premiums on earlier life insurance policies covering Stephenson.

Defendant Hartford Life and Annuity Insurance Co., a Connecticut company and subsidiary of defendants Hartford Life, Inc. and Hartford Life Insurance Co., Inc. (collectively, "Hartford"), is the insurer on the 2001 Policy.   Defendant ELAR Partners LLC ("ELAR") is a Connecticut company that operates as a life insurance carrier, and, on information and belief, has an agreement with Hartford to use its best efforts to "enhance the

---

[1]The following facts are drawn from the SAC.  Because plaintiffs' allegations are presumptively true at this stage, our summary omits language such as "plaintiffs allege."

profitability" of any Hartford life insurance policy sold by investors and/or members of ELAR. Defendant Gerald Ricken is an investor and member of ELAR. On information and belief, Ricken had an agreement with ELAR pursuant to which he invested a portion of his first year commission on Hartford life insurance policies in exchange for the right to share in potential profits on such policies over time and/or to sell a portion of his interest in such policies back to Hartford at some future time.

Defendant Ogilvie Security Advisors Corp. ("Ogilvie") is an Illinois broker-dealer and member firm of the National Association of Securities Dealers ("NASD"). Ricken was a NASD-registered representative and broker of Ogilvie. On information and belief, Ricken had a written agreement with Ogilvie which obligated him to follow Ogilvie's rules and regulations in his sale of securities – including variable life insurance policies – and Ogilvie had the right to terminate Ricken as its broker if Ricken failed to comply with such rules and regulations.

Kohn is a Missouri lawyer, specializing in tax law, and served as plaintiffs' tax lawyer from 1997 through May 2002. Ricken is an insurance salesman, licensed in Illinois and Colorado, who had an agency relationship with Hartford. Defendant Applied Innovative Monetary Solutions, LLC ("AIMS") is a Missouri limited liability company through which Kohn and Ricken conducted their business. On information and belief, Kohn was the Chairman and founder of AIMS,

and Ricken was its President and CEO. On information and belief, Kohn and Ricken shared in both the costs of, and income generated by, their businesses, including AIMS. Kohn and Ricken are brothers-in-law and shared office space. Thus, Ricken conducted his business as a broker of Ogilvie, through AIMS, and contributed his commissions from the sale of Hartford variable life insurance policies to AIMS.

**B.    The 1998 Policies**

In 1998, Stephenson Master, Stephenson/Zion, MRMC and CTCA purchased two variable life insurance policies insuring Stephenson. The first policy, issued by Hartford, insured Stephenson with a face value of $13 million (the "1998 Hartford Policy"). The second policy, issued by American General Life Insurance Company, insured Stephenson with a face amount of $27 million (the "American General Policy"). Together, then, the 1998 policies provided Stephenson with $40 million in coverage. Based on Kohn's advice, plaintiffs structured split-dollar and collateral assignment agreements for each of the 1998 policies, under which MRMC is the assignee of the 1998 policies and MRMC, CTCA, Stephenson/Zion and/or Stephenson Master pay the premiums.

**C.    The 2001 Policy**

On January 27, 2001, the Internal Revenue Service clarified its prior rulings regarding the taxation of split-dollar life insurance arrangements and provided taxpayers with interim guidance

on the requirements for such tax treatment in IRS Notice 2001-5 I.R.B. 459 (the "IRS Notice"). Shortly after issuance of the IRS Notice, Hartford, Kohn, Ricken and AIMS, "in both oral and written communications between February and June 2001," represented to plaintiffs that they needed a new policy to take advantage of the favorable tax treatment under the IRS Notice, and that plaintiffs could achieve substantial cost savings in Stephenson's life insurance coverage by replacing the 1998 policies with a new universal variable life insurance policy.

In May 2001, Kohn, Ricken and AIMS arranged with Hartford and Ogilvie for the issuance and sale of the 2001 Policy, another Hartford policy, which insured Stephenson in the amount of $42 million. Hartford issued the 2001 Policy as a Colorado policy on or about May 22, 2001. Ricken sold the 2001 Policy to plaintiffs through AIMS as a registered representative and broker of Ogilvie, and signed Hartford's Policy Application for the 2001 Policy as Hartford's "Licensed Agent."

Hartford legal representatives provided Kohn, Ricken and/or AIMS with an analysis performed by Arthur Andersen concerning the 2001 Policy and the IRS Notice. Hartford represented that it would require plaintiffs to reduce the life insurance coverage on Stephenson under the 1998 American General Policy from $27 million to $3 million as a condition of issuing the 2001 Policy.

**D. Alleged Misrepresentations**

Between January and June 2001, Hartford representatives – including "one or more high level executives," product designers, internal actuaries, and attorneys – represented to "Kohn, Ricken and/or AIMS" that plaintiffs had to purchase a *new* universal variable life insurance policy with $42 million in coverage to meet their "investment and life insurance objectives" under the IRS Notice. Hartford also represented to Kohn, Ricken and/or AIMS that the total costs of purchasing the 2001 Hartford Policy would be 60% less than the costs that plaintiffs were incurring under the 1998 policies; that although Hartford required plaintiffs to cancel the 1998 Hartford Policy, it would not impose surrender charges for the cancellation and would exchange the 1998 Hartford Policy for the 2001 Policy; that plaintiffs could make up to $4 million in annual "unscheduled premium payments" and then withdraw $4 million without payment of any costs under the 2001 Policy. In addition, Hartford knew or should have known that Kohn, Ricken, and/or AIMS would communicate its representations to Plaintiffs. Alternatively, Hartford directed Kohn, Ricken and/or AIMS to communicate these representations to Plaintiffs.

Each of these allegations attributing misrepresentations to Hartford are "made on information and belief," and "based on written and oral communications between and among Defendants Hartford, Kohn, Ricken and AIMS, on the one hand, and Plaintiff

Stephenson and the other plaintiffs, on the other hand, which took place from February through June 2001."

In addition to conveying Hartford's misrepresentations, set forth above, Kohn, Ricken and/or AIMS, again, "in face-to-face meetings and in numerous other written and oral communications between February and June 2001," made further misrepresentations to plaintiffs, namely, that the IRS Notice *required* plaintiffs to purchase a new life insurance policy – one issued *after* the date on which the IRS Notice was issued, January 27, 2001 – with $42 million in coverage in order for plaintiffs to achieve their investment and life insurance objectives, and that plaintiffs could not use their existing 1998 policies under the IRS Notice. Kohn also represented to plaintiffs that they could reduce the life insurance coverage under the American General Policy without any additional charges. On or about June 1, 2001, Ricken and Kohn provided plaintiffs with a "Hartford Policy illustration" which demonstrated that plaintiffs' costs and expenses under the 2001 Policy would be substantially lower than their costs and expenses under the 1998 Policies.

Plaintiffs also plead the following "omissions": defendants failed to inform plaintiffs that the IRS Notice did not require that plaintiffs replace their 1998 Policies with a new policy to take advantage of the Notice's favorable tax treatment; defendants failed to inform plaintiffs that the costs on the 2001 Policy would

exceed those charged under the 1998 Policies; defendants failed to inform plaintiffs that Hartford would impose surrender charges on the cancellation of the 1998 Hartford Policy and on withdrawals under the 2001 Policy.

All misrepresentations by all defendants were made with knowledge that they were false and/or in reckless disregard of their falsity, and with the intent that plaintiffs rely upon such representations. Further, plaintiffs relied on these representations and omissions in deciding to purchase the 2001 Policy. Had plaintiffs known that the IRS Notice did not require the purchase of a new policy and that the costs of the new policy would exceed those associated with the 1998 policies, they would not have purchased the 2001 Policy.

Contrary to defendants' representations, the IRS Notice did not require plaintiffs to purchase a new policy to take advantage of the tax treatment authorized by the Notice; the 1998 policies were sufficient. Further, the total costs of the 2001 Hartford Policy were, in fact, higher than the costs under the 1998 policies. The surrender charges are still in effect on the 1998 Hartford Policy, which has not been cancelled. Finally, Hartford has imposed commissions, costs, loads and surrender charges on the withdrawals plaintiffs have made on the 2001 Policy.

Plaintiffs have paid more than $8 million in premiums, commissions, costs and expenses to date for the 2001 Policy.

Plaintiffs have incurred costs in excess of $1.3 million more than what they would have incurred under one or both of the 1998 policies.

Kohn and Ricken were motivated to induce plaintiffs to purchase the 2001 Policy because they stood to receive substantial commissions for themselves, AIMS and Ogilvie. On information and belief, the commissions paid by Hartford to the other defendants for the sale and first year premiums on the 2001 Policy were in excess of $500,000. On information and belief, pursuant to its agency agreement with Ricken, Hartford paid Ricken substantial commissions for the sale of the 2001 Policy, at least some of which Ricken contributed to AIMS.

On information and belief, in making these representations, Kohn acted not only as plaintiffs' tax attorney, but also as an "undisclosed agent" of Hartford. On information and belief, Hartford authorized Kohn to act on its behalf in selling the 2001 Hartford Policy. Kohn also acted as an agent of Hartford by working with Ricken – who was an "exclusive agent" of Hartford – to facilitate plaintiff's purchase of the 2001 Policy. On information and belief, Kohn received substantial commissions from Hartford, and through AIMS, for his work in selling the 2001 Policy.

**E.     Plaintiffs' Claims**

Plaintiffs filed their original complaint on May 31, 2002. Less than one week later, prior to defendants' filing a response,

plaintiffs filed an amended complaint. Subsequent to defendants' filing of motions to dismiss, plaintiffs, with leave of court, filed its SAC. Plaintiffs' nine-count SAC added one defendant, Kohn, and contains the following allegations: a "false statement" claim for violation of § 10(b) of the Securities Exchange Act of 1934 ("§ 10(b)") and SEC Rule 10(b)(5) against Hartford, Ogilvie, ELAR, AIMS and Ricken (Count I); an "unsuitable security" claim for violation of § 10(b) and NASD Rule 2310 against Hartford, Ogilvie, ELAR, AIMS and Ricken (Count II); a "churning" claim for violation of § 10(b) against Ogilvie, Ricken and AIMS (Count III); a "control person" claim for violation of § 20(a) of the Securities Exchange Act against Hartford, ELAR and Ogilvie (Count IV); a common law fraud claim against all defendants (Count V); an Illinois Consumer Fraud and Deceptive Practices Act (815 ILCS § 505/2) claim against all defendants (Count VI); a Colorado Consumer Protection Act (Colo. Rev. Stat. § 6-1-105) claim against all defendants (Count VII); a legal malpractice claim against Kohn (Count VIII); and a breach of fiduciary duty claim against Kohn (Count IX).

Defendants have moved to dismiss the SAC in its entirety through four separate motions filed by Hartford and ELAR, Ogilvie, Ricken and AIMS, and Kohn, respectively.

## DISCUSSION

### A.    Standard of Review

Defendants' arguments require application of Rules 12(b)(6)

and 9(b) of the Federal Rules of Civil Procedure, as well as the PSLRA pleading requirements, 15 U.S.C. § 78u-4(b).

The familiar standard of review under Rule 12(b)(6) requires the Court to assume the truth of all facts alleged in the complaint, construe all allegations liberally, and view them in the light most favorable to the plaintiff. Hickey v. O'Bannon, 287 F.3d 656, 657-58 (7th Cir. 2002). Dismissal is properly granted only if it is clear that no set of facts which the plaintiff could prove consistent with the pleadings would entitle the plaintiff to relief. Id. at 657. In other words, if it is possible to hypothesize a set of facts that would entitle a plaintiff to relief consistent with the complaint's allegations, dismissal of the plaintiff's claims under Rule 12(b)(6) is not warranted. Graehling v. Village of Lombard, 58 F.3d 295, 297 (7th Cir. 1995).

The standard of review under Rule 9(b) is more stringent. Rule 9(b) requires a plaintiff to plead with particularity the factual basis for averments of fraud, including: "the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." General Electric Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1078 (7th Cir. 1997) (citation omitted). Put simply, Rule 9(b) particularity "means the who, what, when, where and how: the first paragraph of any newspaper story." DiLeo v. Ernst & Young, 901

F.2d 624, 627 (7th Cir. 1990).

In addition, plaintiffs' allegations brought under the federal securities laws are subject to the strictures of the PSLRA. The PSLRA requires the complaint to "specify each statement alleged to have been misleading," and the "reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Further, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Id. § 78u-4(b)(2).

With these standards in mind, we address the merits of defendants' motions.

## B. Sufficiency of the Fraud Allegations

Defendants argue that each of plaintiffs' claims – securities fraud, common law fraud, statutory consumer fraud, legal malpractice, and breach of fiduciary duty – fail to meet the heightened pleading requirements of Rule 9(b). In addition, defendants contend that the securities fraud claims pled in Counts I through IV fail to comply with the added requirements of the PSLRA.

### 1. Rule 9(b)

As a threshold matter, we find that all of plaintiffs' claims, each premised on fraud, are subject to Rule 9(b)'s pleading requirements. See Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990) ("Rule 9(b) governs claims based on fraud and made pursuant

to the federal securities laws.") (Counts I through IV); Underwriters Laboratories Inc. v. Solarcom LLC, No. 02 C 3933, 2002 WL 31103476, at *3 n.5 (N.D. Ill. Sept. 18, 2002) ("Claims brought under the ICFA must meet the same heightened pleading requirements of Rule 9(b) as common law fraud claims.") (citation omitted) (Counts V and VI); Duran v. Clover Club Foods Co., 616 F.Supp. 790, 793 (D. Colo. 1985) ("[A]llegations of deceptive trade practices under the [Colorado Consumer Protection] Act are subject to Rule 9(b)'s requirement of particularity.") (alterations added) (Count VII) ; Secs. Investor Prot. Corp. v. Stratton Oakmont, Inc., 234 B.R. 293, 311 (Bankr. S.D.N.Y. 1999) ("Claims traditionally not perceived to be grounded in fraud" nonetheless must be pleaded with particularity when the "complaint incorporates by reference prior allegations of fraud.") (Counts VIII and IX). In addition, Counts I through IV, all federal securities law claims, must comply with the PSLRA. See Sutton v. Bernard, No. 00 C 6676, 2001 WL 897593, at *3 (N.D. Ill. Aug. 9, 2001).

Each of plaintiffs' claims, though framed under distinct legal theories and brought against different defendants, all emanate from the same factual allegations – that defendants fraudulently induced plaintiffs to purchase the 2001 Policy by knowingly making false representations regarding both the need for the policy for tax purposes and the costs of the policy. Plaintiffs plead two separate tiers of alleged misrepresentations. First, plaintiffs

aver that "Kohn, Ricken and/or AIMS" made multiple misrepresentations to plaintiffs regarding the 2001 Policy. Second, plaintiffs allege, on information and belief, that many of the misrepresentations made by Kohn, Ricken and/or AIMS originally were conveyed to Kohn, Ricken and/or AIMS by Hartford, and that Hartford had the expectation that those misrepresentations would, in turn, be relayed to plaintiffs.

We first address the alleged misrepresentations conveyed directly to plaintiffs by Kohn, Ricken and/or AIMS. Plaintiffs have sufficiently pled the crux of the misrepresentations to give plaintiffs ample notice as to their alleged content. (SAC ¶¶ 26, 27, 29, 30, 31.) [2] Yet, the misrepresentations are not moored, even loosely, in any particulars – the "who, when, where and how" – which would allow each defendant to prepare a meaningful response. *DiLeo*, 901 F.2d at 627. The only allegation relating to the specifics of the alleged fraud is that "Kohn, Ricken and/or AIMS" made the representations to plaintiffs in "face-to-face meetings and in numerous other written and oral communications between February and June 2001." (SAC ¶ 29.) In effect, then, plaintiffs have alleged that at some time (over a six month span),

---

[2] The "omissions" alleged in paragraph 33 of the SAC – that the IRS Notice did *not* require the purchase of a new policy, that the 2001 Policy *would* carry more costs than the 1998 policies, and that Hartford *would* impose charges for the cancellation of the 1998 Hartford Policy and for withdrawals under the 2001 Policy – add nothing to plaintiffs' allegations. Each one is merely the flip-side of one of the alleged misrepresentations.

someone (among three or more persons, including AIMS agents),
conveyed somehow (either in person, written or otherwise
orally),somewhere, to another someone (among four or more
plaintiffs, including agents of Stephenson's related entities) one
or more of the multiple alleged misrepresentations. Most
fundamentally, plaintiffs fail to link a particular
misrepresentation *either* to a particular defendant or to a
particular plaintiff. See <u>Goren v. New Vision Int'l , Inc.</u>, 156
F.3d 721, 730 (7th Cir. 1998) ("Rule 9(b) is not satisfied where
the complaint vaguely attributes the alleged fraudulent statements
to 'defendants.'"); <u>A.I. Credit Corp. v. Hartford Computer Group,
Inc.</u>, 847 F.Supp. 588, 598 (N.D. Ill. 1994) (One of the
"particulars" which must be pleaded is the identity of the
individual to whom the alleged misrepresentation was made.)

Although there is no mystery as to the nature of the
allegations, plaintiffs' failure to specifically plead the date,
place, method, speaker or recipient of the alleged
misrepresentations leave defendants with far too much guess-work.
See <u>General Electric Capital Corp.</u>, 128 F.3d at 1078. Had
plaintiffs faltered on only one or two of these particulars, we
might reasonably expect defendants to be in a position to complete
the picture. However, plaintiffs' pleading delicts cannot be
characterized as anything other than a wholesale failure to plead
with particularity.

The lone exception to the SAC's vague generalities is plaintiffs' allegation that, on or about June 1, 2001, Ricken and Kohn provided plaintiffs with a "Hartford Policy illustration," which purportedly demonstrated that plaintiffs' costs under the 2001 Policy would be substantially lower than their costs under the 1998 policies. (SAC ¶ 38.) Even though the SAC does not specify to whom or where the illustration was presented, or that plaintiffs relied on it, the allegation survives Rule 9(b) scrutiny.[3]    It cannot, however, standing alone, cure the inadequacy of plaintiffs' remaining averments.

We turn now to the allegations attributed, on information and belief, to Hartford.   As noted above, plaintiffs do not allege that Hartford made any misrepresentations directly to plaintiffs. Rather, it is alleged that Hartford made its misrepresentations to Kohn, Ricken and/or AIMS with the knowledge that such misrepresentations would be passed on to plaintiffs.   That Hartford's alleged misrepresentations were, in a sense, "indirect" does not pose a problem for plaintiffs.   A defendant who makes no direct misrepresentation may still expose himself to primary liability under § 10(b) if: (i) he makes a misrepresentation and knows, or reasonably should know, that it will be communicated to

---

[3]Although we do not make any comment at this juncture on the merits of plaintiffs' claims, we note that the "policy illustration," the only proffered misrepresentation to pass muster under Rule 9(b), was presented *after* the issuance of the 2001 Policy.

the plaintiff, and (ii) the party communicating the misrepresentation attributes the misrepresentation to the defendant. See Gabriel Capital, LP v. Natwest Finance, Inc., 94 F.Supp. 2d 491, 508-09 (S.D.N.Y. 2000). The second prong - here, that the misrepresentations were attributed to Hartford - is borne of § 10(b)'s reliance requirement. See id. ("[A] secondary actor cannot incur primary liability . . . for a statement not attributed to that actor at the time of its dissemination. . . . [R]eliance only on representations made by others cannot itself form the basis of liability.")(quoting Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir. 1998)). Simply, had plaintiffs failed to allege that Kohn, Ricken and/or AIMS expressly attributed the misrepresentations to Hartford, plaintiffs could only claim to have relied on statements by Kohn, Ricken, and/or AIMS, *not* Hartford. Such is not the case, however, and plaintiffs have sufficiently pled both prongs of their "indirect" liability theory as to Hartford.

Further, we are unpersuaded by defendants' position that plaintiffs have failed to plead with sufficient particularity the misrepresentations allegedly made by Hartford. Rather, it appears that information which might allow a more particularized pleading is exclusively within defendants' possession. Plaintiffs cannot be expected to know the "who, what, when, where and how" of Hartford's agents' communications with Kohn, Ricken and/or AIMS.

Thus, plaintiffs' allegations seem to fall within the exception to Rule 9(b) that allows further particulars of the alleged fraud to be obtained by discovery. See Emery v. American General Finance, 134 F.2d 1321, 1323 (7th Cir. 1998); Petri v. Gatlin, 997 F.Supp. 956, 974 (N.D.Ill. 1997). However, this only gets plaintiffs halfway home. Plaintiffs still must plead the particulars of how the misrepresentations allegedly originating with Hartford were conveyed *to them* by Kohn, Ricken and/or AIMS. Plaintiffs have not done so, and to that extent have failed to comply with Rule 9(b) with regard to Hartford.

Because plaintiffs have not pled sufficient particulars to apprise each defendant of the fraud allegations to which each must respond, plaintiffs' claims must be dismissed pursuant to Rule 9(b).

### 2. The PSLRA

In addition, Counts I through IV are subject to the pleading standards of the PSLRA. See 15 U.S.C. § 78u - 4(b). Under the PSLRA, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Id. § 78u-4(b)(2). Defendants submit that plaintiffs' allegations fall short here as well.

Scienter, in the context of a securities fraud claim, refers to a mental state embracing the intent to deceive, manipulate or defraud. See Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n. 12,

96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The Seventh Circuit has consistently held that "reckless disregard for the truth counts as intent" for the purpose of the § 10 (b) scienter requirement. SEC v. Jakubowski, 150 F.3d 675, 681 (7th Cir. 1998).

Although the Seventh Circuit has made clear that, when pleading a securities fraud claim, the particularity requirements of Rule 9(b) have been "stiffened" by the PSLRA (see Law v. Medco Research, Inc., 113 F.3d 781, 785 (7th Cir. 1997)), it has not yet addressed just how "stiff" the standard is for the scienter requirement. Absent such guidance, other judges of this district generally have generally applied the Second Circuit's test, which requires plaintiffs to allege facts either (i) showing that the defendant had both the motive and opportunity to commit fraud; or (ii) constituting strong circumstantial evidence of conscious misbehavior or recklessness. See, e.g., Fishman v. Meinen, No. 02 C 3433, 2003 WL 444223, at *5 (N.D. Ill. Feb. 24, 2003); In re Hartmarx Securities Litigation, No. 01 C 7832, 2002 WL 653892, at *2 (N.D. Ill. April 19, 2002); Sutton, 2001 WL 897593, at *6.

Plaintiffs in this case have framed their allegations to make a "motive and opportunity" showing. Specifically, plaintiffs allege that Hartford was motivated to induce plaintiffs to purchase the 2001 Policy because of the substantial premiums it would receive, and that Kohn and Ricken were similarly motivated because they stood to receive substantial commissions for themselves, AIMS

and Ogilvie. Plaintiffs further allege, on information and belief, that Hartford paid commissions in excess of $500,000 to the other defendants for the sale and first year premiums on the 2001 Policy. From these allegations, plaintiffs conclude that they have more than satisfied the PSLRA's "scienter" pleading requirements by alleging not only that defendants had a motive and opportunity to induce plaintiffs to purchase the 2001 Policy, but that defendants actually *did* profit from the alleged fraud. See Sutton, 2001 WL 897593, at *6.

But the analysis is not as simple as plaintiffs suggest. Motive and opportunity, though usually accompanying "scienter," do not carry talismanic significance. The complaint may plead facts showing motive and opportunity, but there still must be *specific* facts supporting a *strong* inference that the defendant acted with at least a "reckless" state of mind. See 15 U.S.C. § 78u-4(b)(2); Chu v. Sabratek, 100 F.Supp. 2d 815, 823 (N.D. Ill. 2000).

Here, each of plaintiffs' scienter-based claims consist of boilerplate assertions – that defendants "knew that their material misrepresentations were false" – which merely parrot the language of SEC Rule 10b-5. In the securities fraud context, "[a]ssertions that [a defendant] had knowledge that [a representation] was false and misleading . . . are nothing more than rote conclusions." Robin v. Arthur Young & Co., 915 F.2d 1120, 1127 (7th Cir. 1990) (alterations added).

Moreover, commonplace allegations of financial motive

cannot alone satisfy plaintiff's burden of pleading scienter.  See In re. Brightpoint, Inc. Sec. Lit., No. IP 99-0870, 2001 WL 395752, at *13-14 (S.D. Ind. Mar. 29, 2001) ("Under the standard of any circuit that finds evidence of 'motive and opportunity' at least relevant to defendants' scienter, a plaintiff cannot allege scienter based merely upon . . . a desire to increase incentive compensation, or similar factors that would be true for nearly all corporate executives.").  Accordingly, because plaintiffs have not pled specific facts to support a strong inference of "scienter," their securities fraud claims must also be dismissed under the PSLRA.

In addition to their arguments regarding the SAC's shortcomings under Rule 9(b) and the PSLRA, defendants raise several other substantive arguments in support of their motions to dismiss.  However, because each of these arguments rests, in whole or in part, on the nature and specifics of the misrepresentations alleged in the SAC, we will not address those arguments unless and until the challenged allegations reappear in an amended complaint.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss the SAC in its entirety pursuant to Rule 9(b) and the PSLRA are granted.  Plaintiffs may have until October 16, 2003 to file an amended complaint consistent with this order and with counsel's obligations under Federal Rule of Civil Procedure 11.

DATE: September 25, 2003

ENTER:

John F. Grady, United States District Judge